Lauriat, J.
The defendant, Fidelis DeBerardinis (“DeBerardinis”), has been charged with unnatural and lascivious acts with a child under sixteen (Counts 1-3, 9, 15-19 and 21), indecent assault and battery on a child under fourteen (Counts 4-8, 10-13 and 20), and open and gross lewdness (Count 14). He has now moved the court for a determination of his competence to stand trial on these charges.
The court conducted an evidentiary hearing on the defendant’s motion on May 11, 13, 14, 15, 16 and 19, 2004. It heard testimony from Laura Bridges, Terry Watters, Ph.D., Dr. Renee Sorrentino, Susan Lewis, J.D., Ph.D., Dr. Bruce H. Price, Brother Charles Gingerich, Nancy Hebben, Ph.D., Deborah Levy, Ph.D., Dr. Alexander Bodkin, and Timothy P. O’Neill, Esq. The court also received 33 exhibits into evidence at the hearing.
Upon consideration of such testimony from the witnesses as the court finds credible, the exhibits, and the memoranda and oral arguments of counsel, the court makes the following findings of fact and Order on the issue of the defendant’s competency to stand trial in this case.
FINDINGS OF FACT
Frank Paul (Brother Fidelis) DeBerardinis, was born on July 10, 1927, the sixth or seventh of nine children. At least two of his siblings are alive, although neither the Commonwealth’s competency experts nor his own expert witnesses made any effort to contact or speak to them about DeBerardinis, or to secure any information from them about his past or his physical or mental health history. Thus, the only information presented to the court about DeBerardinis prior to age 45 is from his own self-reported history to the various individuals who examined, tested, and treated him. (Exhibits 12 and 13.)
At age 18, DeBerardinis left the tenth grade of public school to enter a Catholic seminary. Although he desired to become a priest, he apparently was unsuccessful in his studies for the priesthood and instead undertook training to become a Franciscan Friar. He never received a high school diploma. After becoming a friar in 1948, DeBerardinis was assigned, in successive years, to missions in Troy and Brooklyn, New York. He was then sent to Central America, where from 1953 to 1964 he served as a missionary in Honduras, Guatemala and El Salvador. DeBerardinis then served at a church in the Bronx, New York for four years. He was then transferred to Our Lady of Mount Carmel in East Boston, where the present offenses allegedly occurred from 1968 to 1973. In 1974, DeBerardinis was sent to Jerusalem where he briefly served as a missionary before returning to upstate New York. He then went to St. Francis Church in Toronto, Ontario, where he stayed from 1974 to 1988. During this period he developed numerous medical conditions, including hypertension, type II diabetes, hyper-cholesterolemia, hypothyroidism and worsening coronary artery disease. (Exhibits 12 and 13.)
DeBerardinis was transferred to a monastery in the Catskills, New York in 1988. In 1990, he suffered a small heart attack and underwent successful coronary bypass surgery in New York City, after which he returned to the St. Francis Church in Toronto. In 1991, a Novice at St. Francis accused DeBerardinis of making inappropriate sexual advances. DeBerardinis was thereupon hospitalized at the Southdown Institute in Aurora, Ontario, for six months for evaluation and treatment. He was released from Southdown in 1992 and retired to St. Bonaventure in Toronto, a friary with no associated church. In 1994, De-Berardinis was sent to a retirement home for Friars in Clearwater, Florida, where he lived until his arrest in this case in 2002. He suffered a second, more serious heart attack in 1995. Since his arrest, DeBerardinis has been living at St. Anthony’s Monastery in the Catskills, New York as a condition of his release on bail while awaiting trial. (Exhibits 12, 13 and 32.)
As a Franciscan Friar, DeBerardinis has apparently been given only modest responsibilities at the several churches and missions to which he has been assigned. Although DeBerardinis is alert and oriented in time and space, he is of low-average intelligence. (Exhibit 13.) His cognitive abilities have been impaired by as many as six different strokes that he has suffered over the past several years. (Exhibit 13.) He has been variously diagnosed as having vascular dementia (Exhibit 13), dementia due to multiple etiologies (Exhibits 1 and 13), major depression or depressive disorder (Exhibits 1 and 13), and anxiety disorder (Exhibits 1 *642 and 13). The court credits these diagnoses. Although DeBerardinis has also been diagnosed as psychotic, showing a moderately elevated thought disorder, and even suffering from Post Traumatic Stress Disorder (Exhibit 13), the court does not find that DeBerardinis is psychotic and does not credit those particular diagnoses.
As a result of his strokes, and well as the onset of Alzheimer’s type dementia associated with his advanced age, DeBerardinis has memory impairments, although these impairments appear to be most prominently and directly related to the events and years involved in the present criminal charges. Although he is not a terrific historian concerning his own past, he appears to have been consistent in his reporting of past events, dates, assignments and missions in his life, including his acknowledgment of past allegations of sexual improprieties on at least one occasion in the early 1990s in Canada. Although several of his examiners have concluded that DeBerardinis has exaggerated stories of events in his past, especially in Central America, none of the examiners made efforts to investigate those stories or confirm their conclusions.
DeBerardinis appears to have a basic understanding of the roles and responsibilities of the judge, jury, prosecutor and defense counsel in a criminal case. He understands the nature of a criminal trial and the range of punishments that may follow any conviction. He fears imprisonment and would reasonably prefer probation to imprisonment if convicted. He reasonably questions whether, in the circumstances of this case, with its attendant pretrial publicity, and the current public reaction to priest sexual assault charges, he should have his case tried to a jury or to a judge alone. Although DeBerardinis has reportedly been unhelpful to his attorneys in their preparation of his defense in this case, the court finds that this is more likely due to an unwillingness to confront the serious nature of the charges than to severe cognitive impairments.
Although DeBerardinis has reportedly been unresponsive at times, pacing constantly and repeatedly saying the Rosary, both his own medical, psychological and neurological experts who have interacted with him, as well as those being used by the Commonwealth, have not noted or observed that conduct. Rather, they have observed him to be attentive, organized and responsive, and occasionally angry and frustrated. His speech is logical, coherent, focused, and he has responded to questions appropriately.
While DeBerardinis has been upset with the prosecutor, calling her “that bitch,” such feelings and reactions are not uncommon in the circumstances in which he finds himself. He has shown an understanding of his own psychological shortcomings, and has consciously decided to decline offers of psychological and pharmacological treatment for his depression and anxiety. During six days of hearings on the issue of competency, the court has observed DeBerardinis to be quiet, calm, occasionally speaking with his attorneys, and generally attentive to the proceedings.
DeBerardinis has been given an extensive range of neurological, psychological and neuropsychological tests by both his own competency experts and those employed by the Commonwealth. The court finds that the two tests administered at the Lindemann Mental Health Center, where DeBerardinis had been sent for a competency evaluation pursuant to G.L.c. 123, §15(b), after his counsel had raised the issue, were neither extensive nor particularly useful. In particular, the court finds that the MacArthur Competence Assessment Tool-Criminal Adjudication test (Exhibit 4) was poorly administered and unscored by the examiner, and that his responses were assumed to be those of a likely malingerer, even though those responses were not probed, that little effort was made to encourage him to be responsive, and that no further or independent assessment of the question of his malingering was undertaken. (See Exhibit 3 at p. 5 and Exhibit 23.) The Rey Fifteen Item test (Exhibit 2) appears to be even less useful as an evaluative tool in the circumstances of this case, and the court gives it no credence here. However, neither test, by itself, is a sufficient tool by which to evaluate a person’s competency to stand trial. Rather, the court must look to all of the facts and circumstances concerning the Commonwealth’s evaluation of DeBerardinis in assessing his competency.
In contrast to these tests, the court credits the testimony of Dr. Renee Sorrentino (“Sorrentino”), DeBerardinis’s treating psychiatrist at the Lindemann, who met with him extensively while he was an in-patient there from March 18 through April 6, 2004. While she concurred in his own experts’ diagnosis of dementia, depression and anxiety, she also observed that his thought structure was linear and concrete, he did not suffer or report a history of auditory or visual hallucinations, and she did not detect any paranoid or suicidal ideation or evidence of delusions. She also documented his refusal to accept treatment for his depression and anxiety, or even to allow her to discuss such treatment with his attorneys. While Sorrentino did not opine or reach a conclusion about DeBerardinis’s competency to stand trial, she gave the most comprehensive assessment of him as an individual and a patient, and provided the most detailed and useful information and observations of him to the court through her testimony and medical records.
The Commonwealth offered the opinion of Dr. Susan Lewis, Ph.D., that DeBerardinis was competent to stand trial. (Exhibit 1.) Dr. Lewis appears well qualified, by her education, training and experience, to render such an opinion. Upon examination, obser *643 vation and evaluation, she found DeBerardinis to be anxious but focused, with normal speech patterns, logical and goal-directed, cooperative, and not disorganized, disoriented or paranoid. The court credits her conclusions that DeBerardinis adequately understands the role of his lawyers, the prosecutor, the judge and the juiy, and of the trial process as well as plea bargaining, and that his competency-related abilities are not significantly impaired by his dementia, depression or anxiely. The court also finds that DeBerardinis tended to exaggerate the level of his attention and memoiy impairments, and tended to minimize his participation in and responses to Dr. Lewis’s evaluation, and that he did so with the knowledge and understanding that such actions might assist him in being found not competent.
The differences in the conclusions and opinions between the Commonwealth’s experts and the defendant’s experts are more a matter of degree than disagreement. Both parties have reached essentially the same conclusions as to his mental and physical health. The defense experts have determined that DeBerardinis’s cognitive deficits are more serious than have the Commonwealth’s experts. They have also reasoned that his deficits preclude a finding of competency, while the Commonwealth’s experts view his deficits as insufficient to affect his legal competence. While the experts at McLean Hospital concluded that DeBerardinis suffers from pervasive cognitive deficits in the areas of memory, concentration and executive functioning, they also concluded that he could follow commands, understand and communicate reasonably, and could learn information if presented in a structured fashion. He could also retrieve information from memoiy if it is presented to him in written rather than verbal form. DeBerardinis is very concrete in his thinking, and has some difficulty with concepts and abstractions. They concluded thathe had a factual but not a reasonable degree of rational understanding of the criminal process.
The court further finds that the defendant’s experts’ conclusion that he is incompetent to stand trial reflects an incomplete understanding of and familiarity with the legal standard for competency, and a well-intended, but nevertheless flawed attempt to elevate legal competency to a higher threshold of competence than the law requires. The court accepts Dr. Bruce Price’s finding that DeBerardinis had suffered several small strokes in different regions of his brain, as evidenced by his recent MRI films (Exhibit 16), and his conclusion that DeBerardinis’s score on a Mini-Mental Status Exam suggested some cognitive impairment. The court also accepts his diagnoses of vascular dementia and possible early stage Alzheimer’s dementia. However, the balance of Dr. Price’s opinion was based on conversations with and reliance upon the evaluations of Dr. Nancy Hebben and Dr. Deborah Levy, rather than his own evaluation. Moreover, Dr. Price provided no basis, by education, training or experience, by which to support or assess his conclusion that “given the data regarding his cognitive decline, that (DeBerardinis) would be unable to appropriately participate in his own defense.” (Exhibit 13.) The court, therefore, declines to accept that opinion.
Dr. Nancy Hebben, Ph.D. administered a battery of neuropsychological tests on DeBerardinis. She found that he scored in the low-average range on the WAIS-III adult intelligence test, low end of the average range in terms of verbal comprehension, social reasoning and judgment abilities, and in the average range in terms of non-verbal reasoning. Dr. Hebben further found that DeBerardinis’s working memory was in the low average range, that his conceptualization abilities were a relative weakness, and that difficulties were apparent in initiation abilities. Dr. Hebben also found that DeBerardinis’s learning and memoiy abilities were variable, but generally in the low average to low end of average range. She reported that DeBerardinis showed some impairments in his language functions, but that his basis visual perception was intact. Dr. Hebben concluded that “neuropsychological test findings were consistent with a progressive dementing process and small vessel disease affecting learning and memory abilities as well as disrupting frontal network systems.” She then concluded that “it is highly unlikely that he is able to cooperate in his own defense and consult with his attorney with a reasonable degree of rational understanding because of limitations in conceptual ability, learning and memoiy, abstraction and reasoning abilities.”
While there is no reason to doubt Dr. Hebben’s specific findings, those findings do not appear to support her broader conclusion about the extent of his cognitive impairments. Moreover, Dr. Hebben’s training, education and experience do not relate to a determination of an individual’s competency to stand trial in a criminal case, and the court does not find that there is a rational basis for crediting or accepting her conclusion as to his legal competence.
Dr. Deborah Levy, Ph.D. administered and scored a series of Rorschach cards using the Thought Disorder Index, and she also administered a vocabulary sub-test of the WAIS-R intelligence test to obtain an estimate of his verbal IQ. She found that DeBerardinis showed moderately elevated thought disorder characterized by fragmentation which was consistent with a chronic organic condition, presumably vascular dementia. She also estimated that his verbal IQ was in the dull-normal or low average range. While her findings related to vascular dementia and IQ to be reasonable and consistent with the findings of other experts, the court does not credit or accept her conclusion that DeBerardinis is psychotic, or that “his executive functioning is so compromised that his reality testing is grossly impaired, he cannot make *644 sense of what happens around him or make rational choices, and he draws inappropriate conclusions based on faulty assumptions.” (Exhibit 13.) These conclusions are simply not supported by the factual evidence, and they appear to exaggerate the strength of her findings. Indeed, when asked to confirm her report’s conclusion that DeBerardinis was psychotic, she amended her opinion by stating that he had the capacity to be psychotic or the propensity for psychotic thinking. Dr. Levy also lacked the training, education or experience to assess and opine about DeBerardinis’s competency to stand trial in a criminal case. Accordingly, the court finds that Dr. Levy’s conclusions do not support a determination of incompetence to stand trial in this case.
Dr. Alexander Bodkin was asked by DeBerardinis’s defense counsel “to evaluate the neuropsychiatric status of Brother Fidelis DeBerardinis . . . regarding his mental competence to participate in his own defense.” (Exhibit 13.) The court first notes that this is not the legal standard or definition of one’s competence to stand trial. In doing so, Dr. Bodkin arranged a comprehensive neuropsychiatric assessment of DeBerardinis by his colleagues at McLean Hospital: Dr. Price, Dr. Hebben and Dr. Levy, and their reports formed, in substantial part, the basis of Dr. Bodkin’s opinion.
In contrast with every other person who examined DeBerardinis, Bodkin stated that DeBerardinis was voluble and “desperately eager” to talk to him. However, Bodkin found the content of his speech to be disorganized, self-contradictory, repetitive and socially inappropriate, findings that were not observed by others. Bodkin also reported that DeBerardinis repeatedly interrupted their interviews to beg for his forgiveness and to express his love for Bodkin. Again, these observations were not repeated or reported by anyone else. Based on his education, training and experience, and his own evaluation as well as the evaluations of others, Bodkin determined De-Berardinis meets diagnostic criteria for several psychiatric disorders, including dementia due to multiple etiologies, psychotic disorder NOS, major depression and anxiety disorder. While the court accepts these particular diagnoses, it does not share Dr. Bodkin’s conclusions that DeBerardinis has shown “acute manifestations of new mental illness ... which are clearly linked to his overwhelming distress following his arrest and prosecution,” and that the result has been “complete functional paralysis, with obliteration of his remaining psychological capacities.” (Exhibit 13.) Nor does the court agree with Dr. Bodkin’s conclusion that DeBerardinis is, and for at least 13 years has been living in a fantasy world, unable to distinguish fact from fantasy. While there are some modest indications tending in these directions, the evidence simply does not support such broad or ex-traordinaiy conclusions. Moreover, Dr. Bodkin’s own conclusions are qualified by his belief that medication for DeBerardinis’s Alzheimer’s disease and medical treatment of his depression, anxiety and psychotic symptoms “ought to increase his willingness to cooperate with his attorneys and the court.” (Emphasis added.) Thus far, DeBerardinis has consciously refused to accept treatment or medication for any of these conditions. Finally, Dr. Bodkin has not shown that he is familiar with or cognizant of the legal standard of competence to stand trial.
DISCUSSION
In a criminal case, the Commonwealth has the burden of proving, by a preponderance of the evidence, that the defendant is competent to stand trial. Commonwealth v. Lyons, 426 Mass. 466, 468-69 (1998). “The standard test for competence is whether the defendant ‘has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as a factual understanding of the proceedings against him.’ ” Commonwealth v. Simpson, 428 Mass. 646 (1999), quoting from Dusky v. United States, 362 U.S. 402, 402 (1960), Commonwealth v. Lyons, 426 Mass. 466, 468-69 (1998). “The test for competence to stand trial involves a modicum of ‘rational understanding.’ ” Commonwealth v. Blackstone, 19 Mass.App.Ct. 209, 212 (1985) (“rational understanding” is a “concept flexible enough to accommodate analytically a defendant whose refusal to plead not guilty by reason of insanity is indicative of grievous attachment from reality”). The court must evaluate the credibility of the expert testimony that is presented on the issue of the defendant’s competency to stand trial. Commonwealth v. Prater, 420 Mass. 569, 574-75 (1995). The courtis not required to accept the testimony of an expert witness, even if uncontroverted. Id. Moreover, “it is not the number of witnesses but the credibility of their testimony which the [court] must weigh.” Id. at 575.
In the circumstances of this case, the court finds and concludes that although the question is a close one, the Commonwealth has shown, by a preponderance of the evidence, that the defendant is competent to stand trial.
Although DeBerardinis has been diagnosed with vascular dementia, early Alzheimer’s dementia, depression and anxiety, these illnesses do not preclude a finding that he is competent to stand trial. He is able, though perhaps at times unwilling, to consult with his lawyers and respond to their questions. He trusts them and appears able to understand and to follow or reject their advice. DeBerardinis has a rational, as well as a factual understanding of the criminal charges pending against him, and a basic comprehension of the nature and process of a criminal trial, including the roles of defense counsel, the prosecutor, the judge and the jury. He is aware of the possible consequences of a criminal conviction, and of the potential benefits of a guiliy plea. DeBerardinis is able to focus on serious matters, and is not easily *645 distracted by extraneous issues or thoughts. He is goal-directed toward not going to prison, and understands that his lawyers are there to assist and advise him.
Although IQ testing has shown DeBerardinis to be a person of low-average intelligence, neither this finding alone or in combination with mental illness renders him incompetent to stand trial. Commonwealth v. Prater, 420 Mass. 569, 574 (1995). See also Commonwealth v. Monzac, 7 Mass.L.Rptr. 191 (Super. Ct. 1997). Nor does the fact that DeBerardinis claims to have little if any memory of the events which led to the present charges render him incompetent to stand trial. Commonwealth v. Lombardi, 378 Mass. 612, 616 (1979), Commonwealth v. Martin, 35 Mass.App.Ct. 96, 97 n.2 (1993). As a practical matter, the lack or loss of memory is a difficulty likely to be shared by all who are involved in this case, since the crimes are alleged to have occurred between 32 and 37 years ago.
The Commonwealth has satisfied its burden of showing by a preponderance of the evidence that Fidelis DeBerardinis has sufficient present ability to consult with his attorneys with a reasonable degree of rational understanding, and also has a rational and factual understanding of the criminal proceedings now pending against him. Therefore, Fidelis De-Berardinis is competent to stand trial.
ORDER
Upon consideration of the foregoing findings and reasons, the court finds that the defendant, Fidelis DeBerardinis, is competent to stand trial.