COMMONWEALTH *vs.* PATRICK W. TRACY.

No. 98-P-522.

Norfolk. November 5, 1999. - November 6, 2000.

Present: ARMSTRONG, C.J., SMITH, & KASS, JJ.

*Assault with Intent to Maim. Evidence,* Spontaneous utterance. *Interstate Agreement on Detainers. Practice, Criminal,* Speedy trial.

At a criminal trial, the judge properly admitted in evidence, under the excited utterance exception to the hearsay rule, a statement made by the defendant's mother, where the record demonstrated that the mother was under the influence of an exciting event at the time she made the statement and that she had personal knowledge regarding the information contained in the statement. [437-439]

A criminal defendant was not entitled to dismissal of criminal charges on the ground that the Commonwealth failed to provide a speedy disposition in accordance with article III(*a*) of the Interstate Agreement on Detainers, St. 1965, c. 892, § 1, where the defendant failed to send written notice and request for such a disposition to the appropriate custodial authorities, as required by the agreement. [439-441]

No error appeared on the record of a criminal trial with regard to certain fleeting remarks by the judge to the jury [441-442], or the admission or exclusion of certain testimony [442-443]; however, where the defendant was convicted of assault and battery by means of a dangerous weapon and under the second branch of the mayhem statute, G. L. c. 265, § 14, such assault and battery was a lesser included offense of mayhem and the conviction and sentence were duplicative [443].

INDICTMENTS found and returned in the Superior Court Department on November 17, 1991.

The cases were tried before *Julian T. Houston,* J.

*Elliot R. Levine* for the defendant.

*Courtney Linnehan,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On April 17, 1992, the defendant was indicted for the crimes of armed assault with intent to murder (G. L. c. 265, § 18[*b*]); assault and battery by means of a dangerous weapon

(G. L. c. 265, § 15A[b]); unlawfully carrying a firearm (G. L. c. 269, § 10); and assault with intent to maim (G. L. c. 265, § 14). Following a jury trial, he was found guilty on all of the indictments.

On appeal, the defendant argues that the judge committed error in allowing in evidence as an excited utterance a statement made by his mother to a police officer and denying his motion to dismiss the case for lack of a speedy trial, and that he made various other errors during the trial. The defendant also claims that certain of his convictions are duplicative and therefore cannot stand.

*Facts.* The jury could find the following facts from the Commonwealth's evidence. On March 1, 1991, the victim was in the White Dove Restaurant and Bar (White Dove) in Dedham at about 9:00 P.M. The defendant approached the victim and another man and asked if he could buy them a drink. The victim declined and the other man walked away.

The defendant then asked the victim if he had been in the White Dove the previous evening with a woman named "Claire." The victim said he had been, and then the defendant repeatedly asked him if he was a police officer. The victim denied being a police officer and asked the defendant if he had a problem. The defendant replied that he should "beat [the victim's] head in." The two men then proceeded outside the lounge, where a fight ensued. The police arrived at about 9:30 P.M., the fight broke up, and the police placed the defendant in protective custody. As the police were leaving, the victim heard the defendant say, "I'm going to kill you." In the presence of the police who transported him to the police station, the defendant made threats regarding the victim and "said that it was not over [and] [h]e'd be back to finish it . . . ."

The defendant was taken to the police station in Dedham and booked. At about 10:30 P.M. he was released into the custody of his mother. At 11:18 P.M., the defendant's mother returned to the police station and told an officer that "her son was in possession of a firearm" and that "he may return to the White Dove Restaurant" and "he might injure someone." As the officer was listening to the defendant's mother, he overheard a radio dispatch stating that there had been a shooting at the White Dove.

At about 11:15 P.M., the defendant had returned to the White Dove. The victim was talking to a woman when suddenly she said to him, "Oh my God, he's back. He has a . . . gun."

The victim saw the defendant entering the lounge with a coat over a gun. The defendant looked for the victim, saw him, and walked directly toward him and fired the gun twice. One of the bullets went through the victim's arm, causing a disabling injury. The defendant then walked up to the victim, stuck the gun into his back, said something, and pulled the trigger, shooting the victim in the side. The victim called the defendant a "mother f[]." The defendant shot him again. The victim again called him a "mother f[]," and the defendant shot him once more. That shot grazed the victim's skin. The defendant then left the White Dove. On May 18, 1991, he was arrested in Maine after committing an armed robbery.

The defendant did not testify at trial. His defense consisted of a claim that at the time of the incident in the White Dove he was suffering from posttraumatic stress disorder (PTSD) caused by his active service in the Vietnam War and that at the time of the shooting he was in an acute state of PTSD triggered by the events of the then ongoing Gulf War.

A psychiatrist and psychologist testified on behalf of the defendant. Both experts testified that the defendant told them he went back to the White Dove with the intention of killing himself but, upon seeing the victim, he had a flashback to his commanding officer in Vietnam who, according to the defendant, personified the evils and violence of that war. The experts testified that, in their opinion, at the time of the shooting the defendant's mental illness was such as to cause him to lack the substantial capacity either to appreciate the wrongfulness of his act or to conform his behavior to the requirements of the law.

On rebuttal, the Commonwealth called its own expert witness who opined that the defendant did not suffer from any mental disease or defect.

1. *The admission of the mother's statement under the excited utterance exception to the hearsay rule.* The defendant claims that the judge committed error in admitting, under the excited utterance exception to the hearsay rule, a police officer's testimony relating the statement the defendant's mother made to him at the police station.

"The excited utterance exception to the hearsay rule 'is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties . . . so that the utterance which then occurs is a spontaneous and sincere response to the

actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy . . . and may therefore be received as testimony to those facts.' " *Commonwealth* v. *Grant*, 418 Mass. 76, 80-81 (1994), quoting from *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 222 (1973). "The trial judge in determining whether an utterance meets the tests of admissibility ought to be given broad discretion. . . . [O]nly in clear cases . . . of an improper exercise of discretion should [the judge's] ruling be revised." *Commonwealth* v. *Grant, supra* at 81, quoting from *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960).

The defendant argues, first, that his mother's statement lacked the necessary spontaneity required under the excited utterance exception. We reject the argument.

The time lapse between the exciting event and the utterance of the statement is not determinative of the statement's reliability; rather, the test is whether or not the declarant was in fact under the stress of the exciting event at the time he or she made the statement. *Commonwealth* v. *Brown*, 413 Mass. 693, 696 (1992). See Liacos, Massachusetts Evidence § 8.16, at 553 (7th ed. 1999) ("Statements need not be strictly contemporaneous with the exciting cause to be admissible, provided that the underlying event has not lost its sway and been dissipated").

Here, the defendant's mother made her statement to the police officer some forty-eight minutes after the defendant had been released to her custody. At some time while the defendant was with her, the underlying event took place, i.e., she became aware that the defendant was in possession of a gun and that he intended to return to the White Dove, the scene of his fight. Upon the mother's return to the police station and at the time she made the statement there was evidence that she was "visibly upset," "pale," and "[h]er voice was quivering, cracking." Thus, the judge was warranted in concluding that at the time the mother made the statement she was still under the influence of the underlying event.

The defendant also argues that the judge committed error because the mother's personal knowledge regarding a portion of the statement, i.e., "that he may return to the White Dove

Restaurant" and "that he might injure someone," had not been established. See *Commonwealth* v. *Crawford*, 417 Mass. 358, 363 (1994) ("when an extrajudicial statement is offered in court for its truth, the proponent of the statement may be required to establish that the declarant had personal knowledge of the information contained in the statement").

The trial judge specifically addressed the question of the mother's personal knowledge and concluded that it might be inferred from the evidence that the mother did indeed have personal knowledge that her son had a gun and might be returning to the White Dove, the place where the mother knew that he had been involved in a fight. We agree with the judge's conclusion. The mother was not hostile to her son; she had gone earlier to the police station to have him released into her custody. A reasonable inference may be drawn that the mother returned to the police station to seek the assistance of the police to stop her son before he might injure someone.[1]

In any event, even if the statement were inadmissible, it was not so prejudicial as to require reversal because it was cumulative of other evidence demonstrating that the defendant had formed the required mental state for the crimes with which he was charged. At no time did the defendant deny that he returned to the White Dove with a gun and shot the victim. Further, there was evidence that, at the time the defendant was placed in protective custody, he told the victim he was going to kill him and told the police that it was not over and that "[h]e'd be back to finish it . . . ." Further, there was strong evidence from numerous witnesses regarding the defendant's conduct at the time he returned to the lounge with a gun. All of the evidence supported the reasonable inference that after the fight the defendant intended to return to the White Dove to shoot the person with whom he had fought earlier in the evening and that he possessed the required mental state for the crimes charged. Therefore, even if it were error to allow in evidence the mother's statement to the police officer, it was not prejudicial.

2. *The denial of the defendant's dismissal motion.* The

[1]The defendant also argues that his mother's statement failed to qualify as an excited utterance because the Commonwealth failed to show that she was not available. The argument fails because in *Commonwealth* v. *Whelton*, 428 Mass. 24, 28-29 (1998), the court held that the excited utterance exception does not require that the declarant be unavailable to testify before an excited utterance is admitted at trial.

defendant filed a motion to dismiss the indictments on the ground that he was denied a speedy trial. According to the defendant, the Interstate Agreement on Detainers (Agreement), to which the Commonwealth is a party, St. 1965, c. 892, § 1, required that his indictments be dismissed. In addition, the defendant claimed that he was prejudiced by the delay in his trial because (a) one expert witness died before trial, and he was unable to replace that witness with an experienced expert witness at trial, and (b) if he had been first tried and convicted on the indictments under review here, the Federal judge in Maine might have sentenced him to serve his Federal sentence concurrently with his Massachusetts sentences. The judge denied the motion to dismiss, and the defendant claims error.

The crimes in Massachusetts occurred on March 1, 1991, and the defendant was indicted on April 17, 1991. On May 18, 1991, the defendant was arrested for armed robbery. A detainer was issued from the Norfolk County district attorney's office on May 28, 1991.

On April 16, 1993, the defendant was convicted in the United States District Court in Maine of violating 18 U.S.C. § 922(g)(1) (1994) (felon in possession of a firearm). On October 29, 1993, the defendant was sentenced to a term of 312 months. On June 28, 1994, the defendant was brought back to Massachusetts for trial on the indictments under review here. The defendant went to trial on December 11, 1996.

"The provisions of art. III and IV [of the Interstate Agreement on Detainers] form the core of the Agreement. Article III focuses on the prisoner. Article III(*a*) provides that a prisoner who 'has entered upon a term of imprisonment' can request the speedy disposition of the charges giving rise to a detainer." *Commonwealth* v. *Petrozziello*, 22 Mass. App. Ct. 71, 76-77, cert. denied, 479 U.S. 852 (1986), quoting from the Agreement.[2] The phrase "term of imprisonment" means "that definable period of time during which a prisoner must be confined in

---

[2]Article III sets forth the requirements that the prisoner must comply with an order to initiate the process whereby he would be transferred to another State to resolve untried indictments in that State. Article IV outlines the procedure which the Commonwealth must comply with in order to obtain temporary custody of the prisoner.

The only issue on appeal is the defendant's attempt to invoke the procedure and therefore it is only necessary to discuss the requirements contained within art. III.

order to complete or satisfy the *prison term or sentence* which has been ordered." *Id.* at 78 n.6, quoting from *United States* v. *Dobson*, 585 F.2d 55, 58-61 (3d Cir.), cert. denied, 439 U.S. 899 (1978) (emphasis original).

Here, the defendant did not start to serve a "term of imprisonment" until October 29, 1993, the date he was sentenced on the Federal charges and, therefore, any attempt to invoke the Agreement prior to that date was premature. After that date, the defendant failed to comply with the provisions of the Agreement.

Pursuant to art. III of the Agreement, the defendant was required to send written notice and request final disposition of the outstanding charges against him to the "warden, commissioner of correction or other official having custody of the prisoner," who was then promptly to forward the request and notice along with a certificate, stating such information as the term of imprisonment, time already served, and parole eligibility date, to the appropriate prosecuting authority and court. See *Commonwealth* v. *Martens*, 398 Mass. 674, 677 (1986), cert. denied, 481 U.S. 1041 (1987). Here, the defendant attempted to invoke the Agreement by writing various letters to the clerk of the Superior Court for Norfolk County and to the district attorney's office. At no time did the defendant file written notice with the warden of the facility where he was serving his sentence. Letters to the district attorney or the clerk's office are not, however, the equivalent of notice to the appropriate custodial officials enumerated in art. III. *Commonwealth* v. *Martens*, 398 Mass. at 679-681. Because the defendant failed to comply with the provisions of the Agreement, he was not entitled to its protections.

3. *Other issues.* On appeal, the defendant raises several issues regarding the judge's conduct of the trial. He also claims error with respect to his sentences. We have examined the issues relating to the trial and conclude that they are without merit, and, therefore, we treat them in a summary manner. As to the issues raised by the defendant in regard to his sentences, we hold that the conviction and sentence for assault and battery by means of a dangerous weapon is duplicative of his conviction and sentence for assault with intent to maim.

a. The judge did not commit error in denying the defendant's motion for a mistrial. The defendant's motion was based on the judge's remarks to the jury after it had been empanelled. The judge explained to the jury who the various people were in the

courtroom and what role they would play during the course of the trial. In introducing the court reporter and explaining her role, the judge mentioned that "if, for some reason, the appellate courts need to get involved . . . , it is essential that there be a complete and clear record of [the trial]."

According to the defendant, the remarks were error because the jurors might believe that they "need not be overly concerned about their decision because an appeals court can 'look' over their decision and set their guilty verdicts aside."

There was no error in denying the defendant's motion for a mistrial. In the circumstances, the judge's fleeting remarks "did not have the 'inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict.' " *Commonwealth* v. *Johnson*, 379 Mass. 177, 182 (1979), quoting from *Commonwealth* v. *Walker*, 370 Mass. 548, 574, cert. denied, 429 U.S. 943 (1976)

b. The judge properly allowed a police officer to testify that the defendant uttered racial epithets because such testimony was relevant to show the defendant's state of mind. Those statements were made after the defendant was placed in protective custody and demonstrate the defendant's continuing anger that led him to return to the lounge and shoot the victim.

c. The judge did not commit error in striking a portion of a defense expert witness's testimony. That portion was hearsay, and the fact that the defendant's sanity was the issue did not render the hearsay admissible. *Commonwealth* v. *Roman*, 414 Mass. 235, 239 (1993)

d. The judge properly overruled the defendant's objections and motions to strike two statements made by the prosecutor setting out the grounds for her objections to responses from a witness. We note that the defendant has failed to cite any authority in support of his argument, and the argument does not rise to the level of appellate argument cognizable by this court. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Commonwealth* v. *Delaney*, 34 Mass. App. Ct. 732, 741 n.7 (1993), *S.C.*, 418 Mass. 658 (1994). Even if we were to consider the matter, the defendant's argument is without merit: the prosecutor was stating that the witness's answers were not responsive, and the judge agreed and sustained the objections.

e. The judge did not commit error in failing, sua sponte, to strike testimony of the Commonwealth's expert witness, elicited by defense counsel, that the witness had prior professional

contact with the defendant. Counsel did not object to the answers, and we further note that the answers were fully responsive to counsel's questions. The defendant's argument is frivolous.

f. The defendant claims that the judge committed error when he allowed the Commonwealth's expert to include in his qualifications that in a recent case he had been hired by the Commonwealth but testified for the defendant. According to the defendant, the testimony could be admitted only if the expert's integrity and partiality had been attacked on cross-examination. The expert's integrity and partiality were attacked on cross-examination. Therefore, if it was error to allow the testimony, it was harmless.

g. We reject the defendant's argument that the convictions and consecutive sentences imposed for assault with intent to murder and assault with intent to maim were duplicative. The indictment for assault with intent to maim was based on the defendant's act of shooting the victim in the arm, causing a disabling injury, while the assault with intent to murder was based on a wholly separate and distinct act of the defendant — firing at least two shots into the victim's body. All the shots occurred within a period of thirty seconds. After the first shot, the defendant had time to contemplate his acts; yet he moved into a better position to shoot the victim. Based on the evidence a jury reasonably could find that the two episodes constituted separate acts that warranted two separate convictions and sentences. See *Commonwealth* v. *Simpson*, 428 Mass. 646, 655 (1999).

The defendant also claims that his conviction, on which a consecutive sentence was imposed, on the indictment charging him with assault and battery by means of a dangerous weapon was duplicative of his conviction and sentence for assault with intent to maim. The defendant was convicted and sentenced under the second branch of the mayhem statute. G. L. c. 265, § 14. That portion makes subject to criminal penalty one who, "with intent to maim or disfigure, assaults another person with a dangerous weapon . . . and by such assault disfigures, cripples or inflicts serious or permanent physical injury upon such person . . . ." See *Commonwealth* v. *Martin*, 425 Mass. 718, 721-722 (1997). Assault and battery by means of a dangerous weapon is a lesser included offense of the second branch of the mayhem statute. *Id* at 722. Therefore, the defendant's conviction and sentence on the charge of assault and battery by means of a dangerous weapon must be vacated.

Accordingly, the judgments on the indictments charging assault with intent to murder, unlawfully carrying a firearm, and assault with intent to maim are affirmed. The judgment on the indictment charging assault and battery by means of a dangerous weapon is vacated, the verdict is set aside, and the indictment on that charge is to be dismissed.

*So ordered.*