**Patrick TRACY**

v.

**Keith OLSON, et al.**

**No. CIV.A.01–12107–RGS.**

United States District Court,
D. Massachusetts.

Nov. 30, 2005.

See also, 50 Mass.App.Ct. 435, 737 N.E.2d 930.

---

Patrick Tracy, White Deer, PA, pro se.

Maura D. McLaughlin, Office of Attorney General, Criminal Bureau, Appellate Division, Linda A. Wagner, Natalie S. Monroe, Attorney General's Office, Boston, MA, for Commonwealth of Mass, Respondent.

### MEMORANDUM AND ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

 After review, I will adopt Magistrate Judge Dein's Report and Recommendation.[1] That a defendant may be convicted of two statutory offenses arising out of the same criminal episode if each crime "requires proof of an additional fact that the other does not," is a long-established rule of law. *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871).[2] Assault with intent to maim (second branch)[3] requires proof of a specific intent to maim or disfigure, while assault with intent to murder requires proof of a specific intent to kill (among other separate and distinct elements). Thus, as the Magistrate Judge properly concluded, under the *Blockburger* test petitioner's dual convictions do not implicate the Double Jeopardy Clause. While I agree with the Magistrate Judge that the petitioner's mother's excited statement to police was not testimonial within the meaning of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),[4] the issue is not open and shut. A split already exists among circuit and state courts that will require resolution by the Supreme Court. *Compare United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004) *with United States v. Saget,* 377 F.3d 223, 228–229 (2nd Cir.2004). *See also Washington v. Davis,* 154 Wash.2d 291, 111 P.3d 844 (Wash.), *cert. granted,* — U.S. ——, 126 S.Ct. 547, — L.Ed.2d —— (2005); *Hammon v. Indiana,* 829 N.E.2d 444 (Ind.), *cert. granted,* — U.S. ——, 126 S.Ct. 552, — L.Ed.2d —— (2005). Nonetheless, because *Crawford* enunciates a new rule of criminal procedure (overruling in part *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)), it has no retroactive application to petitioner's case. *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Even in the unlikely event the Supreme Court should decide that one of the retroactivity exceptions set

---

1. The petitioner has not interposed an objection to the Report and Recommendation.

2. The rule set out in *Morey* was adopted by the United States Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

3. Tracy was convicted under the "second branch" of the mayhem statute.

4. *See United States v. Brown,* 322 F.Supp.2d 101, 105 n. 4 (D.Mass.2004). *See also United States v. Brito,* 427 F.3d 53 (1st Cir.2005).

out in *Lambrix v. Singletary,* 520 U.S. 518, 539, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997), should apply in the *Crawford* context, I agree with the Magistrate Judge that the admission of the mother's statement was harmless error.

## ORDER

For the foregoing reasons, the Magistrate Judge's Recommendation is *ADOPTED* and the petition is *DISMISSED* with prejudice.

SO ORDERED.

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The Petitioner, Patrick Tracy ("Tracy"), has brought this Petition for a writ of habeas corpus challenging his state law convictions for armed assault with intent to murder, unlawfully carrying a firearm, and assault with intent to maim (the "Petition") (Docket # 3). Following a ruling on Respondent's Motion to Dismiss Petition as Unexhausted,[5] there remain two claims which are ripe for review: whether Tracy's conviction for both assault with intent to murder and assault with intent to maim violates "the protection against double jeopardy" (Ground One), and whether the admission of statements made by Tracy's mother to the police, which were admitted by way of a police officer's testimony under the "excited utterance" exception to the hearsay rule, violated Tracy's Sixth Amendment rights. (Ground Three). For

the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for a writ of habeas corpus be DENIED.

### II. STATEMENT OF FACTS[6]

#### The Underlying Facts

Tracy's convictions arise from an incident which occurred on March 1, 1991 at the White Dove Restaurant and Bar ("White Dove") in Dedham, Massachusetts. The facts are detailed more fully in the decision of the Massachusetts Appeals Court, *Commonwealth v. Tracy,* 50 Mass. App.Ct. 435, 737 N.E.2d 930 (2000), and will only be summarized herein. Briefly, at about 9:00 p.m., Tracy was at the White Dove when he got into a verbal, and then physical, altercation with the victim. *Id.* at 436, 737 N.E.2d at 932. He was taken into protective custody by the police. *Id.* While he was being taken away, Tracy threatened to come back and kill the victim. *Id.* Tracy was taken to the police station, booked and, at about 10:30 p.m., released into the custody of his mother. *Id.*

At 11:18 p.m., Tracy's mother returned to the police station and told an officer that "her son was in possession of a firearm" and that "he may return to the White Dove Restaurant" and "he might injure someone." *Id.,* 737 N.E.2d at 932–33. Tracy objects to the admissibility of his mother's statements, which were admitted as "excited utterances."

---

**5.** On April 22, 2004, this court issued a Report and Recommendation ("R & R") concluding that one of the three grounds asserted by the Petitioner had not been exhausted. (Docket No. 29). The Petitioner agreed to drop the unexhausted claim, and the District Judge adopted the R & R in a Memorandum

and Order dated August 26, 2004. (Docket No. 37).

**6.** With minor exceptions, these facts are taken from this court's original R & R. References to "SA" are to the Supplemental Answer (Docket # 11).

Tracy had in fact returned to the White Dove at about 11:15 p.m. The Appeals Court described the incident as follows:

The victim saw the defendant entering the lounge with a coat over a gun. The defendant looked for the victim, saw him, and walked directly toward him and fired the gun twice. One of the bullets went through the victim's arm, causing a disabling injury. The defendant then walked up to the victim, stuck the gun into his back, said something, and pulled the trigger, shooting the victim in the side. The victim called the defendant a "motherf[ ]." The defendant shot him again. The victim again called him a "motherf[ ]," and the defendant shot him once more. That shot grazed the victim's skin. The defendant then left the White Dove.

*Id.* at 437, 737 N.E.2d at 933.

Tracy was arrested on May 18, 1991 in Maine after committing an armed robbery. *Id.* He was convicted on April 16, 1993 in the United States District Court in Maine for being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)). *Id.* at 440, 737 N.E.2d at 935. On October 29, 1993, Tracy was sentenced to 312 months on the federal conviction. *Id.* Meanwhile, on April 17, 1992, Tracy was indicted in connection with the White Dove incident for armed assault with intent to murder, assault and battery by means of a dangerous weapon, unlawfully carrying a firearm, and assault with intent to maim. *Id.* at 435–36, 737 N.E.2d at 932. He was brought back to Massachusetts for trial on June 28, 1994. *Id.* A jury trial was held beginning on December 11, 1996. *Id.* Tracy's defense was that he suffered from post-traumatic stress disorder (PTSD) caused by his active military service in Vietnam, and he presented the testimony of a psychiatrist and a psychologist who both opined that at the time of the shooting Tracy was mentally ill and that, as a result of that illness, he lacked the substantial capacity either to appreciate the wrongfulness of his act or to conform his behavior to the requirements of the law. *Id.* at 437, 737 N.E.2d at 933. The Commonwealth's expert testified to the contrary, and opined that Tracy did not suffer from any mental disease or defect. *Id.* On December 20, 1996, the jury convicted him on all counts of the indictment. *Id.*

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

The standard of review to be applied to Tracy's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts .... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). An "unreasonable application is different from

an incorrect one." *Id.* In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir.2002) (en banc) (internal citation and quotation omitted). This increment "need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* Thus, a habeas petitioner "must do more than merely identify an incorrect result." *Jackson v. Coalter,* 337 F.3d 74, 81 (1st Cir.2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000). *See also Horton v. Allen,* 370 F.3d 75, 79–80 (1st Cir.2004).

### B. *Ground One—Double Jeopardy*

Tracy claims as his first ground for habeas relief that his conviction for both assault with intent to murder and assault with intent to maim violates the Double Jeopardy Clause. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits successive prosecution or multiple punishment for 'the same offense.'" *Witte v. United States,* 515 U.S. 389, 391, 115 S.Ct. 2199, 2202, 132 L.Ed.2d 351 (1995). Thus, the "Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct.

2221, 2225, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) [7] (footnote omitted)). "Where consecutive sentences are imposed in a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.* The rule for determining "whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment" is "whether each provision requires proof of an additional fact which the other does not." *Id.* at 166, 97 S.Ct. 2221, 97 S.Ct. at 2225 (internal citation omitted). *See also United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993), and cases cited.

### 1. *Relevant Facts*

In Tracy's case, the Appeals Court rejected the Petitioner's "argument that the convictions and consecutive sentences imposed for assault with intent to murder and assault with intent to maim were duplicative." *Commonwealth v. Tracy,* 50 Mass.App.Ct. at 443, 737 N.E.2d at 937. As the Appeals Court explained:

The indictment for assault with intent to maim was based on the defendant's act of shooting the victim in the arm, causing a disabling injury, while the assault with intent to murder was based on a wholly separate and distinct act of the defendant—firing at least two shots into the victim's body. All the shots occurred within a period of thirty seconds. After the first shot, the defendant had time to contemplate his acts; yet he moved into a better position to shoot the

---

7. Overturned on other grounds by *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

victim. Based on the evidence a jury reasonably could find that the two episodes constituted separate acts that warranted two separate convictions and sentences. *See Commonwealth v. Simpson,* 428 Mass. 646, 655, 704 N.E.2d 1131 (1999).

*Id.*

Tracy contends that the Appeals Court's recitation of facts is not correct. Instead of there being two episodes taking 30 seconds as described by the Appeals Court, Tracy contends that the evidence established "one rapid succession of five shots from an automatic pistol." (Pet. Mem. (Docket No. 40) at 2). Thus, according to Tracy, there was no evidence of an intent to maim. (*Id.*).[8] However, this court is bound to treat the Appeals Court's determination of facts as presumptively correct, and the burden is on Tracy to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Gunter v. Maloney,* 291 F.3d 74, 76 (1st Cir.2002). Tracy has not met his burden.

Tracy argued to the Appeals Court (in a motion for reconsideration) as follows:

> The facts out of the victim's mouth were that he saw Appellant in the door of the White Dove Restaurant and Bar with a weapon in his hand and that to protect himself "I turned sideways because I didn't want to get a shot in the chest area." (Tr. 2–60). Upon turning sideways the victim received two shots into his arm. The fact that the victim had his arm up and the fact that the bullets entered his arm may have foiled the intended killing. The victim after being shot in the arm looked at his arm and saw blood and upon looking again he saw Appellant and Appellant stuck the gun in his back and fired three more times. (Tr. 2–61–65). As further evidence of rapid firing of the five bullets, Kathleen Messier, who testified for the Commonwealth, testified that she was talking with the victim at the time (Tr. 2–101) and that all five shots were in rapid succession. She heard two shots and then a short pause and then three more shots. (Tr. 2–115 and 129). Former police officer James Douglas was also talking with the victim at the time of the shooting. (Tr. 2–177). Mr. Douglas testified that Appellant fired four or five shots in rapid succession. (Tr. 2–187).
>
> Based on these facts, it was not correct for this Court to conclude that the time between the first and last shot was within a period of thirty seconds. Further, the first and second shots were fired with the same intent as the third, fourth and fifth shots, i.e., Armed Assault with Intent to Murder. There was no evidence of armed assault with the specific intent to maim.

(SA Ex. 5 at 2–3). Thus, even under Tracy's recitation of the events, there was a break between the shots to the victim's arm and the time when Tracy stuck the gun in the victim's back and shot him three more times.[9] Tracy has not estab-

---

**8.** To the extent Tracy is claiming that he could not as a matter of fact or law harbor both an intent to maim and an intent to kill, that argument has been rejected by the courts. *See Commonwealth v. Diaz,* 53 Mass. App.Ct. 209, 213–14, 758 N.E.2d 1058, 1061–62 (2001) (court rejects claim "that a person cannot harbor, simultaneously, the intent to maim and the intent to murder because the two states of mind are inconsistent.... Experience shows that the human mind is capable of simultaneously harboring inconsistent intent, and case law is in accord with this understanding.").

**9.** Tracy also ignores, but does not dispute, the finding that comments were made by Tracy and the victim in-between shots, as found by

lished by clear and convincing evidence that the state court's findings of fact, "including inferences properly drawn from such facts," should not be presumed correct. *Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 526, 121 L.Ed.2d 391 (1992).

### 2. *Separate and Distinct Acts*

Tracy's claim of double jeopardy must fail for various reasons. As an initial matter, if the convictions relate to two separate and distinct acts, prosecuting the defendant for two crimes does not implicate double jeopardy. *See United States v. Felix*, 503 U.S. 378, 385–86, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25 (1992) (double jeopardy prohibition only precludes multiple prosecutions for the "same offense"). Here, the Appeals Court concluded that there were two such separate events—the shooting of the victim in the arm, and then changing position and shooting him in the back. The conclusion by the Appeals Court that there were two separate events and that Tracy's convictions for both do not constitute a violation of the Double Jeopardy Clause is not contrary to or an unreasonable application of established Federal law.[10]

Tracy's case differs significantly from *Commonwealth v. Sullivan*, 20 Mass.App. Ct. 802, 482 N.E.2d 1198 (1985), on which he relies. There, a sequence of blows with a knife was found to be "so close that as a matter of fact and sense the acts involved were so intertwined as to be one." *Id.* at 809, 482 N.E.2d at 1203. In Tracy's case, however, the Appeals Court relied on *Commonwealth v. Simpson*, 428 Mass. 646, 647, 704 N.E.2d 1131, 1132 (1999), where the defendant struck the victim with a

hammer, the victim jumped up, and the defendant then switched to a knife and stabbed the victim several times. The Massachusetts Supreme Judicial Court confirmed the holding that these "were separate acts that warranted two separate convictions of armed assault with intent to murder and a separate conviction of mayhem." *Id.* at 655, 704 N.E.2d 1131,. The *Simpson* fact scenario is very close to the facts in Tracy's case and the conclusion that there were separate events does not warrant habeas relief.

### 3. *Different Elements of the Crimes*

Tracy's double jeopardy argument fails for the additional reason that the elements of the two crimes of which he was convicted differ. Thus, as the Supreme Court first articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the test is whether. each crime "requires proof of a fact which the other does not." *See Albernaz v. United States*, 450 U.S. 333, 337–38, 101 S.Ct. 1137, 1141–42, 67 L.Ed.2d 275 (1981). This is true even if the offenses charged arose out of a single transaction. *Id.* at 344 n. 3, 101 S.Ct. at 1145 n. 3, and cases cited. In the instant case, the crime of assault with intent to maim required proof, *inter alia*, of an intent to maim and proof that the accused "disfigure(d), cripple(d), or inflict(ed) serious or permanent physical injury" upon the victim. Mass. Gen. Laws ch. 265, § 14. The crime of armed assault with intent to murder, on the other hand, did not require serious or permanent physical injury and required a different intent—the intent to murder. Mass. Gen.

---

the Appeals Court. *Commonwealth v. Tracy*, 50 Mass.App.Ct. at 437, 737 N.E.2d at 933.

**10.** Tracy also seems to argue that the trial judge failed to properly instruct the jury on the existence of separate and distinct acts.

(*See* Pet. Mem. (Docket No. 40) at 4–5). However, Tracy did not challenge the jury charge before the state courts and this argument is not properly before the court.

Laws ch. 265, § 18(b).[11] Thus, the Appeals Court's determination that Tracy's conviction of both crimes did not violate the Double Jeopardy Clause is not contrary to or an unreasonable application of Federal law.

### C. *Ground Three—Mother's Statement*

As his third ground for habeas relief, Tracy challenges the admission of the statements made by his mother to the police, which were admitted by way of a police officer's testimony under the "excited utterance" exception to the hearsay rule.[12] It is Tracy's contention that the admission of this testimony violated his rights under the Sixth Amendment Confrontation Clause. For the reasons detailed herein, this court recommends that the habeas petition on this ground be denied as well.

### 1. *Relevant Facts*

At issue is the admissibility of statements that Tracy's mother made to the police that "her son was in possession of a firearm" and that "he may return to the White Dove Restaurant" and "he might injure someone." *Commonwealth v. Tracy,* 50 Mass.App.Ct. at 436, 737 N.E.2d at 932–33. In rejecting Tracy's contention that the "statement lacked the necessary

spontaneity required under the excited utterance exception," the Appeals Court concluded that "[t]he time lapse between the exciting event and the utterance of the statement is not determinative of the statement's reliability; rather, the test is whether or not the declarant was in fact under the stress of the exciting event at the time he or she made the statement." *Id.* at 438, 737 N.E.2d at 934. As the Appeals Court concluded:

> Here, the defendant's mother made her statement to the police officer some forty-eight minutes after the defendant had been released to her custody. At some time while the defendant was with her, the underlying event took place, i.e., she became aware that the defendant was in possession of a gun and that he intended to return to the White Dove, the scene of his fight. Upon the mother's return to the police station and at the time she made the statement there was evidence that she was "visibly upset," "pale," and "[h]er voice was quivering, cracking." Thus, the judge was warranted in concluding that at the time the mother made the statement she was still under the influence of the underlying event.

*Id.* Moreover, in rejecting Tracy's claim that the statement lacked personal knowledge, the Appeals Court found as follows:

> utterance," that its admission was not dependent on the mother being available, and that there was evidence from which it might be inferred that the statements were based on the mother's personal knowledge. *Commonwealth v. Tracy,* 50 Mass.App.Ct. at 437–39 & n. 1, 737 N.E.2d at 933–34 & n. 1. The Appeals Court further concluded that "even if the statement were inadmissible, it was not so prejudicial as to require reversal because it was cumulative of other evidence demonstrating that the defendant had formed the required mental state for the crimes with which he was charged." *Id.* at 439, 737 N.E.2d at 934.

---

11. For these reasons, the cases relied on by Tracy involving lesser included offenses are not controlling. *See, e.g., Commonwealth v. Sanchez,* 405 Mass. 369, 381–82, 540 N.E.2d 1316, 1324 (1989) (convictions for indecent assault and battery were duplicative of convictions for rape of a child by force, as the former is a lesser included offense of forcible rape); *Whalen v. United States,* 445 U.S. 684, 693–94, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980) (rape is a lesser included offense of the crime of killing committed in the course of the rape).

12. The Appeals Court concluded that the testimony was properly admitted as an "excited

The trial judge specifically addressed the question of the mother's personal knowledge and concluded that it might be inferred from the evidence that the mother did indeed have personal knowledge that her son had a gun and might be returning to the White Dover, the place where the mother knew that he had been involved in a fight. We agree with the judge's conclusion. The mother was not hostile to her son; she had gone earlier to the police station to have him released into her custody. A reasonable inference may be drawn that the mother returned to the police station to seek the assistance of the police to stop her son before he might injure someone.

*Id.* at 439, 737 N.E.2d at 934.

### 2. *Standard of Review*

As an initial matter, this court must address the relevant law to be applied to this claim. As a general statement, a habeas petition is evaluated according to the clearly-established Supreme Court law in effect at the time the petitioner's conviction became final. *Williams v. Taylor*, 529 U.S. at 379–82, 120 S.Ct. at 1505–07. At the time of Tracy's conviction, the controlling law was defined by *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which conditioned "the admissibility of all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (quoting *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539). "Excited utterances" were considered to be a "firmly rooted hearsay exception" under *Ohio v. Roberts*, and the admission of such testimony did not, as a general rule, violate the Confrontation Clause. *See Puleio v. Vose*, 830 F.2d 1197, 1206–07 (1st Cir.1987), and cases cited. *See also White v. Illinois*, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 743 n. 8, 116 L.Ed.2d 848 (1992) ("[t]here can be no doubt" that the hearsay exception for spontaneous declarations is "firmly rooted"). However, *Crawford v. Washington* expressly overruled *Ohio v. Roberts* and held that it is a violation of the Sixth Amendment Confrontation Clause to admit testimonial evidence at trial unless the declarant is unavailable and there was a prior opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. at 1374.

The Respondent contends that *Crawford* does not apply retroactively to Tracy's case. (Resp. Opp. (Docket No. 42) at 12 n. 6). If determined to be espousing a "new rule of criminal procedure," *Crawford* would not apply retroactively unless it fell "within either of two exceptions: (1) the rule places a class of private, conduct beyond the power of the state to proscribe, or (2) the rule is a 'watershed' rule of criminal procedure, implicating the fundamental fairness and accuracy of the proceeding." *Horton v. Allen*, 370 F.3d at 83 (citing, *inter alia, Teague v. Lane*, 489 U.S. 288, 310–11, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989)). "While the question of the retroactive effect of *Crawford*, if any, is an important one," this court, like the First Circuit to date, can "bypass the question" because the statements at issue were not "testimonial" in nature, and, therefore, *Crawford* does not preclude the statements' admission. *Horton*, 370 F.3d at 83.

### 3. *The Statements Were Nontestimonial*

"*Crawford* draws a distinction between testimonial and nontestimonial hearsay and applies only to the former category of statements." *Id. Crawford* did not purport to conclusively define what constitutes testimonial evidence, but rather gave examples of classes of such statements, in-

cluding (1) "ex parte in-court testimony or its functional equivalent," (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364 (internal punctuation and citation omitted). It is with this last class of statements that we are presently concerned.

The very recent First Circuit decision in *United States v. Brito,* 427 F.3d 53, 55–56 (1st Cir.2005) addressed the issue "under what circumstances should an excited utterance (in [Brito's] case, a 911 operator) be considered testimonial." 427 F.3d at 55–56.. Relying on *Crawford,* the *Brito* court found the 911 call at issue to be nontestimonial. Applying the standard adopted by the First Circuit in *Brito,* it is clear that Tracy's mother's statements must be deemed nontestimonial, and *Crawford* does not apply.

As the *Brito* court noted, courts have split on the issue whether excited utterances could be deemed testimonial in nature. 427 F.3d at 61. The First Circuit determined that an "ad hoc, case-by-case approach" is needed, *id.* at 66–67, and described the relevant inquiry as follows:

> An inquiring court first should determine whether a particular hearsay statement qualifies as an excited utterance. If not, the inquiry ends. If, however, the statement so qualifies, the court must then look at the attendant circumstances and address the likelihood that a reasonable person would have either retained or regained the capacity to make a testimonial statement at the time of the utterance.

*Id.* The *Brito* court then went on to "offer some general guidance for the proper application of this rule." *Id.* Of particular relevance, the court held as follows:

> Ordinarily, statements made to police while the declarant or others are still in personal danger cannot be said to have been made with consideration of their legal ramifications. Such a declarant usually speaks out of urgency and a desire to obtain a prompt response. It follows, therefore, that such statements will not normally be deemed testimonial. *See* [*State v. Hembertt,* 269 Neb. 840, 696 N.W.2d 473, 483 (Neb.2005)]. Once the immediate danger has subsided, however, a person who speaks while still under the stress of a startling event is more likely able to comprehend the larger significance of her words. If the record fairly supports a finding of comprehension, the fact that the statement also qualifies as an excited utterance will not alter its testimonial nature. *See* [*Drayton v. United States,* 877 A.2d 145, 149–50 (D.C.2005)].

*Id.* at 62.

In *Brito,* an anonymous caller to 911 said she had just heard gun shots, a man had pointed a gun at her and she could still see the man whom she described in detail. *Id.* at 58–59. The court concluded that the fact that the caller, her son and others in the vicinity were in personal peril, that there existed clear and present danger, that little time had passed, and that the caller obviously desired "a prompt response—the removal of a dangerous man from the street," all led to the conclusion that the caller did not have the capacity "to appreciate the potential long-range use of her words" and that the statements, therefore, were nontestimonial. *Id.* at 63.

In the instant case, Tracy's mother was "visibly upset" and "pale," and her voice was "quivering, cracking." She was clear-

ly concerned that someone was in imminent threat of being shot and she was trying to stop an incident from happening. The statements were made to the police at a time when others were clearly in personal danger. This situation is very similar to that present in *Brito*. Under such circumstances, the statements are nontestimonial, so *Crawford* does not apply. ·

Since *Crawford* does not apply, the decision in *Ohio v. Roberts* controls the Confrontation Clause issue. *See Horton*, 370 F.3d at 85. Since the statements "were admitted pursuant to a firmly rooted hearsay exception," there was no violation of Tracy's Confrontation Clause rights. *Horton*, 370 F.3d at 85. The state court's decision finding no violation of the Confrontation Clause is not contrary to or an unreasonable application of Federal law.

### 4. *Harmless Error*

Finally, this court recommends that Tracy's petition be denied because even if there was a violation of his Confrontation Clause rights, it was harmless error to admit the testimony. *See Lilly v. Virginia*, 527 U.S. 116, 139–40, 119 S.Ct. 1887, 1901, 144 L.Ed.2d 117 (1999) (if testimony erroneously admitted in violation of Confrontation Clause rights, case reviewed under harmless error analysis). The Appeals Court found that there was ample evidence from which the jury could find the requisite intent. As the court held:

> even if the statement were admissible, it was not so prejudicial as to require reversal because it was cumulative of other evidence demonstrating that the defendant had formed the required mental state for the crimes with which he was charged. At no time did the defendant

deny that he returned to the White Dove with a gun and shot the victim. Further, there was evidence that, at the time the defendant was placed in protective custody, he told the victim he was going to kill him and told the police that it was not over and that "[h]e'd be back to finish it . . . . Further, there was strong evidence from numerous witnesses regarding the defendant's conduct at the time he returned to the lounge with a gun." All of the evidence supported the reasonable inference that after the fight the defendant intended to return to the White Dove to shoot the person with whom he had fought earlier in the evening and that he possessed the required mental state for the crimes charged. Therefore, even if it were error to allow in evidence the mother's statement to the police officer, it was not prejudicial.

*Commonwealth v. Tracy*, 50 Mass.App.Ct. at 439, 737 N.E.2d at 934–35. This decision is not contrary to or an unreasonable application of Federal Law.

### IV. CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for a writ of habeas corpus be DENIED.[13]

Oct. 27, 2005.

---

**13.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objec-

tion thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of

the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Mo-* *tor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).