NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

20-P-517                                    Appeals Court

COMMONWEALTH  vs.  JASON HALTIWANGER.

No. 20-P-517.

Plymouth.     February 1, 2021. – May 11, 2021.

Present:  Wolohojian, Desmond, & Grant, JJ.

Controlled Substances.  Due Process of Law, Competency to stand
     trial, Assistance of counsel, Fair trial, Continuance.
     Constitutional Law, Waiver of constitutional rights,
     Assistance of counsel, Right of defendant in criminal case
     to act pro se, Public trial.  Practice, Criminal,
     Continuance, Competency to stand trial, Defendant's
     competency, Psychiatric examination, Assistance of counsel,
     Waiver, Self-representation, Public trial, Defendant pro
     se, Fair trial.  Evidence, Competency, Certificate of drug
     analysis.  Mental Impairment.  Fair Trial.  Attorney at
     Law, Withdrawal.  Judge.

     Indictments found and returned in the Superior Court
Department on October 24, 2014.

     The cases were tried before Thomas J. Perrino, J.

     Mark Booker for the defendant.
     Jessica L. Kenny, Assistant District Attorney, for the
Commonwealth.

WOLOHOJIAN, J.  In the course of conducting a pretrial hearing that, among other things, included a colloquy regarding the defendant's waiver of his right to counsel, the judge became concerned about the defendant's competence.  Despite that concern, the judge accepted the defendant's waiver.  At the same time, the judge arranged a G. L. c. 123, § 15 (a), examination to take place the following day.  Although the defendant appeared for that examination, he refused to be examined and, as a result, the psychologist offered no opinion as to the defendant's competence.  Without any further inquiry into the defendant's competence or making any findings, the judge allowed the defendant to proceed to trial pro se aided by appointed standby counsel.  We conclude that it was error to accept the defendant's waiver of counsel without further inquiry into his competence and making appropriate findings.  However, in the unusual circumstances of this case, where the defendant does not argue that he was incompetent to stand trial, the record does not otherwise contain substantial evidence of incompetence, and there is reason to think that the defendant's conduct was that of a so-called "sovereign citizen" seeking to deliberately manipulate the court rather than the product of incompetence, we conclude that the appropriate remedy in this case is for the defendant to file a motion for new trial rather than to vacate the judgments.

Separately, we conclude that the evidence was insufficient to prove the composition of the pills that were the basis of the defendant's conviction of possession with intent to distribute a class E substance, subsequent offense, and reject the defendant's remaining arguments.

Background.  In October 2014, the defendant was indicted for various drug offenses.[1]  The charges were based on drugs found by police when they executed search warrants for the defendant's car and apartment, and his girlfriend's car (which the defendant was driving at the time of the search).

The defendant was represented by private counsel when he was arraigned on November 12, 2014, and he continued to be represented by that lawyer for almost the next two years. During that time, the case was actively litigated.  On December 22, 2015, the Commonwealth certified that it had complied with its discovery obligations, and on May 17, 2016, the case was set for trial on October 24, 2016.

Less than two weeks before trial, defense counsel filed a motion to withdraw, citing his suspension from the practice of

---

[1] The charges were:  unlawful distribution of a class B substance (oxycodone), as a subsequent offense, G. L. c. 94C, § 32A (c), (d); trafficking in cocaine, G. L. c. 94C, § 32E (b); unlawful possession with intent to distribute a class B substance (oxycodone), as a subsequent offense, G. L. c. 94C, § 32A (c), (d); and unlawful possession with intent to distribute a class E substance (cyclobenzaprine), as a subsequent offense, G. L. c. 94C, § 32D (a), (b).

law effective October 1, 2016.[2] The case was continued for successor counsel to file an appearance, which he did on November 10, 2016. The case was set for trial on June 7, 2017.

Less than one month before this trial date, the defendant terminated the services of his second attorney, who filed a motion to withdraw. In support of the motion, defense counsel stated that the "defendant has taken his file and indicated that he wants a new lawyer to represent him." The motion was allowed ten days later, and successor counsel filed a notice of appearance the same day. The trial date was again continued; this time, to October 2, 2017.

The trial date was subsequently continued for various reasons, including at the request of the defendant, the defendant's unsuccessful petition seeking leave to take an interlocutory appeal, and for a brief period at the request of the Commonwealth. Throughout this period, the defendant continued to be represented by his third private counsel. The case was set for trial on October 2, 2018.

Approximately two weeks before this trial date, during a hearing, the defendant informed the judge that he wanted to hire a different lawyer. The trial was continued in order to permit

---

[2] The Commonwealth points out that the suspension was imposed more than one month earlier, on August 31, 2016. But this information was not part of the record below, nor is it pertinent to our analysis.

the defendant's third lawyer to withdraw and a fourth to appear. The defendant's fourth private counsel filed his appearance on September 27, 2018, and, after various additional procedural events, the case was ultimately scheduled for a final pretrial conference on June 6, 2019, and for trial on June 17, 2019. At this point, the case was almost five years old, and much of the delay was connected to the fact that the defendant had repeatedly changed counsel.

This brings us to the sequence of events that are at the center of this appeal. On April 5, 2019, the defendant again moved to continue the trial date. A Superior Court judge denied the motion.

The parties appeared in court on June 6, 2019. The defendant, through his fourth counsel, filed a motion seeking reconsideration of the denial of his motion to continue the trial. Although defense counsel acknowledged that the trial date had been agreed upon, he stated that his office had mistakenly agreed to a date that conflicted with another trial he had in Rhode Island. Given the age of the case, and the number of previous continuances, the judge denied the request for a further continuance. As soon as the judge announced his decision, the defendant stated that he was "going on [his] own," and would represent himself. He asked to file a "special appearance," and he stated that he wanted the prosecutor "to

certify [his] right to subrogation."[3]  When the judge inquired of defense counsel what these statements meant, defense counsel stated that he thought the defendant was simply frustrated with the process knowing that the case was coming to an end, that he (the defendant) "didn't accept the Commonwealth's offer," and that "he's just expressing some disconcern [sic] with the process at this point."  The judge continued the matter to permit the defendant to consult with counsel about his options with respect to proceeding pro se.  After that consultation, the hearing continued during which, as a result of the defendant's additional statements regarding subrogation, the judge concluded that the defendant was "confused" and did not understand what he was doing "from a legal perspective."  The judge advised the defendant that proceeding pro se is generally ill-advised, but that he recognized the defendant's right to make that decision. Defense counsel requested that the judge allow the defendant to have the weekend to think about his options.  The judge agreed, and arranged to have the parties return for a colloquy to determine whether the defendant continued to wish to proceed pro se.

---

[3] The defendant also filed "[g]eneral correspondence regarding subrogation and trustees, with [the d]efendant's birth certificate."

The parties indeed returned four days later, on June 10, 2019.  The defendant's fourth lawyer filed a motion to withdraw on the ground that the defendant had terminated his services.  For two reasons, we set out in detail what transpired during the remainder of the hearing.  First, the details are central to the issues raised on appeal.  Second, they may help trial judges in future cases recognize some of the hallmark phrases and concepts used as litigation delaying tactics by a group known as "sovereign citizens."[4]

> The judge:  "All right.  Mister Haltiwanger, you wish to terminate the services of your lawyer?"
>
> The defendant:  "Mmm-hmm.  [acknowledges yes]  Yes."
>
> The judge:  "Well, you have a trial coming up."
>
> The defendant:  "Well, I'm not ready for trial."
>
> The judge:  "You're not ready for trial?"
>
> The defendant:  "Nope."
>
> The judge:  "Why not, sir?"
>
> The defendant:  "I need to file my motions."
>
> The judge:  "Pardon me?"

---

[4] "Sovereign citizens are anti-government extremists who believe that even though they physically reside in this country, they are separate or 'sovereign' from the United States.  As a result, they believe they don't have to answer to any government authority, including courts, taxing entities, motor vehicle departments, or law enforcement."  Federal Bureau of Investigation, Stories, Domestic Terrorism:  The Sovereign Citizen Movement, https://archives.fbi.gov/archives/news/stories /2010/april/sovereigncitizens_041310/domestic-terrorism-the-sovereign-citizen-movement [https://perma.cc/4V8C-Z2S9].

The defendant:  "My motions."

The judge:  "What motion?"

[brief pause]

The judge:  "This --"

The defendant:  "My motions."

The judge:  "This is a motion to withdraw filed by your attorney."

The defendant:  "My motion."

The judge:  "What I just asked, sir --"

The defendant:  "Is this a court of record?  Is this a court of record?"

The judge:  "Is this a court of record?"

The defendant:  "Yes."

The judge:  "Yes, it is, sir."

The defendant:  "So, on the record, could you certify my rights to subrogation?"

The judge:  "Sir, I've told you --"

The defendant:  "The prosecutor certify my rights to subrogation."

The judge:  "Sir, you're very confused."

The defendant:  "No, I'm not.  We can't proceed or --"

The judge:  "No."

The defendant:  "-- until that's resolved first."

The judge:  "The -- we're -- sir, you're going to proceed."

The defendant:  "No, we cannot proceed."

The judge:  "All right."

The defendant:  "And, I, and I don't consent."

The judge:  "It doesn't matter if you consent.  Your case is five --"

The defendant:  "I do not --"

The judge:  "-- years old.  It's --"

The defendant:  "I do not consent."

The judge:  "Pardon me?"

The defendant:  "I do not consent."

The judge:  "Irrelevant as far as I'm concerned."

The defendant:  "I would like the prosecutor to certify my rights to subrogation in writing, please."

The judge:  "Sir, you want to represent yourself?"

The defendant:  "Could the prosecutor certify my rights to subrogation, please?"

The judge:  "Sir?"

The defendant:  "In writing, please."

The judge:  "Sir, do you want to wish -- do you wish to represent yourself?"

The defendant:  "Could the prosecutor certify my rights to subrogation, please?"

The judge:  "The answer is no.  All right?"

The defendant:  "And, could I get that in writing?"

The judge:  "You just had it.  All right?"

The defendant:  "All right.  So, I got it in writing, right?  Get it in writing.  Okay?"

The judge:  "Are you prepared to proceed to trial?"

The <u>defendant</u>:  "No."

There was then an exchange between the judge and the prosecutor during which the prosecutor confirmed that the Commonwealth was ready for trial as scheduled.  The hearing then continued.

The <u>judge</u>:  "I'm going to allow the motion to withdraw because you have terminated the services of [the fourth attorney's] office.  All right?"

The <u>defendant</u>:  "Yeah."

The <u>judge</u>:  "Now, do you wish me to appoint standby counsel to you?"

The <u>defendant</u>:  "No."

The <u>judge</u>:  "Do you wish to represent yourself?"

[brief pause]

The <u>defendant</u>:  "Are you going to certify my rights to subrogation today?  No?  Right?"

The <u>judge</u>:  "That's what I said, sir."

The <u>defendant</u>:  "Okay.  Could I get something in writing?"

The <u>judge</u>:  "Sir, do you wish to represent yourself?"

The <u>defendant</u>:  "Yes."

The <u>judge</u>:  "All right."

[brief pause]

The <u>judge</u>:  "I could appoint standby counsel for you, sir."

The <u>defendant</u>:  "I got [<u>sic</u>] to write my motions."

The <u>judge</u>:  "Pardon me?"

The defendant:  "I have to write my motions."

The judge:  "All right."

[brief pause]

The judge:  "Do you understand that if you can't afford a lawyer, the court will appoint counsel for you?"

[brief pause]

The judge:  "Do you understand that?"

The defendant:  "No, I don't."

There was then an exchange during which the judge informed the defendant that the judge wanted the defendant to speak with someone in the probation department to determine whether the defendant qualified for appointed counsel, and he refused to speak with probation.  The hearing then continued as follows:

The clerk:  "Your Honor, would you like me to swear him in?"

The judge:  "Yes."

The clerk:  "Please raise your right hand, sir."

[brief pause]

The clerk:  "Your Honor, he's refusing to raise his right hand."

The judge:  "Sir, are you refusing to raise your right hand?"

The defendant:  "I don't swear."

The judge:  "All right.  Sir, please tell me your name and age."

The defendant:  "Jason, Upper Case, Lower Case, Haltiwanger, Upper Case, Lower Case."

The judge:  "How old are you, sir?"

The defendant:  "44."

The judge:  "How far have you gone in school, sir?"

The defendant:  "What does this have to do with going to trial?"

The judge:  "How far have you gone in school, please?"

[brief pause]

The judge:  "Are you refusing to answer my question?"

[brief pause]

The judge:  "I'm trying to determine, sir, if you are competent to represent yourself."

The defendant:  "Mmm-hmm."

The judge:  "Understand what I'm trying to do?"

[brief pause]

The judge:  "All right.  You refuse to answer that question?"

The defendant:  "I plead the Fifth."

The judge then continued with a colloquy designed to permit him to determine whether the defendant's waiver of counsel was knowing and voluntary.  Among other things, the judge inquired into the defendant's knowledge of legal matters, his lack of legal training, his experience in defending himself, his knowledge of court room rules and procedures, the requirements of picking a jury, the charges against the defendant and the penalties they carried, the

need to examine witnesses, and the need to preserve objections at trial. The defendant's answers were either off point (such as stating that he was pleading "the Fifth"), or else indicated that he did not have knowledge of the matters about which the judge was inquiring. The defendant also repeated his refusal to meet with someone in probation to see if he qualified for court-appointed counsel. After this unproductive colloquy, the hearing continued:

> The judge: "Counsel, has there ever been any question in your mind with regard to this man's competency?"
>
> [brief pause]
>
> Fourth counsel: "No. Not -- excuse me, Your Honor. Not since last Friday."
>
> [brief pause]
>
> The judge: "All right."
>
> The defendant: "And, before I go to trial, I need her to, a bond, I need your oath of office and a foreign registration."
>
> The judge: "Pardon me?"
>
> The defendant: "Oath of office and foreign registration before we could even proceed."
>
> The judge: "Okay. All right. Do you understand the magnitude of representing yourself, sir?"
>
> [brief pause]
>
> The defendant: "I need the oath of office and foreign registration before we can even proceed to trial."

The judge:  "Okay."

[brief pause]

The judge:  "All right, sir.  Do we have a waiver of counsel for him?"

A waiver of counsel form was then provided to the defendant.  At the same time, the judge inquired whether a psychologist was available to examine the defendant.  The defendant submitted the signed waiver form, and the hearing concluded with the following exchange:

The judge:  "Sir, were you trying to say 'without prejudice' here?"

The defendant:  "Mmm-hmm.  [acknowledges yes]  Yes."

The judge:  "So, you waive your right to counsel, but you're signing this as 'without prejudice,' correct?"

The defendant:  "Yes."

The judge:  "Okay.  Sir, I'm going to order you to be back here tomorrow at two o'clock in the afternoon.  I have a question as to whether or not you're competent to stand trial.  And, I'm going to have you appointed -- I'm going to have you interviewed by the court psychiatrist[5] to see if, in fact, you are competent to stand trial."

The defendant:  "Hmm."

The judge:  "All right?"

The defendant:  "Yup."

---

[5] It appears that the examiner was actually a psychologist rather than a psychiatrist, although nothing in this opinion turns on the distinction.

The judge allowed the fourth lawyer's motion to withdraw. The judge made no findings (written or oral) regarding the defendant's competency to waive his right to counsel, nor did the judge certify the waiver or complete the bottom half of the preprinted waiver of counsel form.[6]

The defendant appeared the following day, but refused to be interviewed by the court psychologist. The judge conducted a brief hearing at which the defendant represented himself, and the court psychologist was present. It does not appear that the prosecutor was present. In pertinent part, the two-page transcript of this hearing shows:

> The judge: "Doctor, I had asked you to come in today to conduct a 15A exam of Mister Haltiwanger."
>
> The witness: "Yes."
>
> The judge: "Have you had a chance to speak with him?"
>
> The witness: "Briefly, Judge. He declined interview."

---

[6] The bottom section of the waiver of counsel form is to be completed and signed by the judge. In pertinent part, it provides:

#### "CERTIFICATE AND FINDINGS OF JUDGE

"In accordance with Supreme Judicial Court Rule 3:10, as amended, and G. L. c. 211D, § 5, I hereby certify that I have informed the party or parent or guardian named above of the right to counsel in this case. I further certify that, after an oral colloquy with the party or parent or guardian, I find said party or parent or guardian is competent to waive counsel and has knowingly and voluntarily elected to proceed without counsel."

The judge:  "He declined to be interviewed?"

The witness:  "Yes."

The judge:  "I see.  All right.  Thank you for your service."

. . .

The judge:  "Mister Haltiwanger?"

The defendant:  "Yes."

The judge:  "See you here Monday morning for trial."

The defendant:  "I'm going to go file a suit for civil rights actions 'cause you're making me go to trial not being prepared for it."

The judge:  "All right.  Thank you."

The judge made no further inquiry into the defendant's competence, nor did he make any findings on that topic.

On the morning of trial, the parties appeared before the same judge who had handled the hearings we outlined above.  The defendant was uncooperative.  Among other things, he refused to be addressed by the judge as "Mister Haltiwanger," saying, "My name is Jason and I'm the living man."  He also objected to having standby counsel appointed.  When the judge nonetheless appointed standby counsel, the defendant asked if the court was "on the record," and then stated that he refused to consent to the proceedings.  He also demanded that "bond be immediately brought forward," and made references to his "damages."  He

stated that he was not prepared to go forward to trial because he had never received any files. The judge reviewed the case file, and saw that the case had been extensively litigated over five years. The judge further noted that the defendant had terminated the services of each of his previous four attorneys within days of each impending trial date,[7] and concluded that the defendant was attempting to manipulate the court for the purpose of delay. The defendant told the judge that he was neither consenting to the proceedings nor would he proceed. When he confirmed his refusal to proceed, the judge revoked bail and ordered the defendant into custody. The judge then referred the case for trial before a different judge in another session.

When the parties appeared before the trial judge, the defendant was represented on a limited basis by a new private attorney. This final private attorney appeared solely for the purposes of again requesting a continuance of the trial,[8] which the trial judge denied in light of the

---

[7] The timing of the withdrawal of the first attorney cannot be laid at the defendant's door, because it followed on the heels of that lawyer's suspension.

[8] The lawyer also asked that the defendant's name appear with only the initial letter capitalized.

extensive history of continuances and proceedings we have set out above.

Trial then took place with the defendant representing himself, aided by standby counsel.[9]  Indictments 1 and 2 (unlawful distribution of a class B substance, subsequent offense) were dismissed on the Commonwealth's motion.  The jury returned guilty verdicts on the remaining charges.  After the defendant waived his right to a jury trial, the trial judge found him guilty of the subsequent offense portions of the distribution charges.  This appeal followed.

Discussion.  The defendant raises three issues relating to the procedural history we have set out above.  First, he contends that it was an abuse of discretion to deny his motion to continue the trial.  We dispose of this argument in the margin.[10]  Second, he argues that the

---

[9] Standby counsel was not one of the defendant's previous lawyers.

[10] It is not clear whether the defendant's argument concerns the motion to continue made by his fourth counsel, or the one made on the morning of trial by the attorney who made a limited appearance on his behalf.  Regardless, there was no abuse of discretion in denying either motion given that the trial date had been agreed upon long in advance, the basis for the requested continuance was a problem of defense counsel's own making, and in light of the extensive history of terminating defense counsel each time trial approached, which permitted the finding that the defendant was attempting to manipulate the court.  See Commonwealth v. Fernandez, 480 Mass. 334, 340

hearing judge erred in failing to hold a competency hearing or to make any findings concerning competency. Third, the defendant argues that it was error to accept his waiver of counsel in light of the hearing judge's bona fide question as to the defendant's competence. Because these two arguments are related, we discuss them together. After that discussion, we turn to the defendant's claims that the court room was impermissibly closed during jury selection, that there were errors in the prosecutor's cross-examination of one of the witnesses, and that the evidence was insufficient to prove that the pills in his possession were in fact cyclobenzaprine, a class E substance.

1. Competency and waiver of the right to counsel. In order to accept a defendant's waiver of his right to counsel, a judge must determine both that the waiver is knowing and voluntary and that the defendant is competent to make it. Godinez v. Moran, 509 U.S. 389, 400-401 (1993). "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself."

_____

(2018), quoting Commonwealth v. Pena, 462 Mass. 183, 189 (2012) ("Whether a motion for continuance should be granted lies within the sound discretion of the judge, whose action will not be disturbed unless there is patent abuse of that discretion, which is to be determined in the circumstances of each case"). See also Commonwealth v. Johnson, 424 Mass. 338, 341-343 (1997).

Indiana v. Edwards, 554 U.S. 164, 172 (2008), quoting Godinez, 509 U.S. at 399.  If a defendant is incompetent, then any waiver of his rights has no effect.  Vuthy Seng v. Commonwealth, 445 Mass. 536, 549 (2005), S.C., 456 Mass. 490 (2010).

Because mental illness itself is not a unitary concept, there is no "single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial[11] and (2) whether a defendant who goes to trial must be permitted to represent himself." Edwards, 554 U.S. at 175.  Instead, this evaluation is to be made by trial court judges based on the circumstances presented and their own observations.  See id. at 175-177, and cases cited.  If those circumstances and observations raise a "'bona fide doubt' as to the defendant's ability to make an informed decision to proceed without counsel," a separate inquiry into competency is required (citation omitted).  Commonwealth v. Barnes, 399 Mass. 385, 389 (1987), construing Westbrook v. Arizona, 384 U.S. 150 (1966) (per curiam).  See Commonwealth v. Hill, 375 Mass.

---

[11] To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and [have] a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960). See Commonwealth v. Vailes, 360 Mass. 522, 524 (1971).

50, 60 (1978); Commonwealth v. Johnson, 80 Mass. App. Ct. 505, 511-512 (2011). Only if a "substantial question of possible doubt" regarding the defendant's competence exists, must the judge sua sponte undertake the required inquiry. Commonwealth v. Boateng, 438 Mass. 498, 503 (2003), quoting Hill, 375 U.S. at 54.

Although a separate inquiry must be conducted where the judge has a bona fide doubt about the defendant's competence, the scope of that inquiry is not rigid. Instead, "[t]he scope of the inquiry into a mentally ill defendant's competence to waive counsel and self-represent are determined by the circumstances at hand." Commonwealth v. Means, 454 Mass. 81, 96 (2009). Thus, a full evidentiary hearing into competency is not required in every instance because "not every instance of abnormal behavior or sign of mental disorder constitutes a sufficient basis to trigger the hearing requirement." Commonwealth v. Martin, 35 Mass. App. Ct. 96, 98 (1993). See Commonwealth v. Corbett, 98 Mass. App. Ct. 34, 38-40 (2020). Instead, a judge may, in his discretion, choose to order an evaluation by a court psychologist or physician pursuant to G. L. c. 123, § 15. The judge may also "rely on [his or] her own observations and direct knowledge of events, testimony from court officers and court staff, and

the defendant's statements and conduct, as well as the impressions of counsel." Commonwealth v. Scionti, 81 Mass. App. Ct. 266, 272-273 (2012). But, regardless of the form of inquiry, it must be on the record, Means, 454 Mass. at 96, and written findings must be made, S.J.C. Rule 3:10, § 3, as appearing in 475 Mass. 1301 (2016);[12] Mass. R. Crim. P. 8, as amended, 397 Mass. 1226 (1986).

Here, as a result of his colloquy to determine whether the defendant was knowingly and voluntarily waiving the right to counsel, the hearing judge became concerned about the defendant's competence. Among other things, in response to the judge's questions, the defendant referenced completely irrelevant matters, including subrogation, and which letters of his name were to be capitalized. Almost all of the defendant's answers to the judge's questions were off point or nonsensical. The judge briefly inquired of the defendant's fourth counsel whether he had any concerns about the defendant's competence. But that inquiry led only to the not-so-clear response that counsel

---

[12] "Before allowing a waiver of counsel, the judge, after conducting a colloquy with the party, shall make written findings that the party is competent to waive counsel and that the party has knowingly and voluntarily elected to proceed without counsel." S.J.C. Rule 3:10, § 3.

had not had a concern since three days earlier.[13]  In these circumstances, the judge was well within his discretion in ordering that the defendant be evaluated by the court psychologist the following day.

But the judge should not have accepted the defendant's waiver of counsel while simultaneously harboring a bona fide doubt regarding the defendant's competence.  Nor should the judge have accepted the waiver without making a written finding regarding competence and explaining the basis for that finding.  Although we have held that failure to make a written finding of competence, or to certify the defendant's waiver, is not necessarily conclusive of a lack of valid waiver, see Commonwealth v. Najjar, 96 Mass. App. Ct. 569, 580-581 (2019); Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 242-243 (2003), we have never overlooked these requirements where -- as here -- the judge stated that he had a doubt about the defendant's competence.  In the face of the judge's explicit concern about the defendant's competence, this is not a case where we can

_____

[13] This statement was inscrutable without further inquiry by the judge.  It is equally possible that the lawyer was referring to the lawyer's impressions when he appeared with the defendant at the hearing the previous Thursday, or to impressions the lawyer formed that day outside of court, or to the defendant's filings (which included mention of subrogation) the previous Thursday.  The judge should have probed the meaning of fourth counsel's statement.

assume that the judge made an implicit finding to the contrary.  Contrast Commonwealth v. Federici, 427 Mass. 740, 745 (1998) (record permitted inferential finding that waiver was voluntary and intelligent).

The situation did not meaningfully change the following day.  The judge received no information from the court psychologist other than that the defendant had refused to be evaluated.  There was no input from counsel (it is not apparent that the prosecutor was even present and, by this point, the defendant was proceeding pro se), and the judge made no inquiry of the defendant into his mental health status or history.  See Johnson, 80 Mass. App. Ct. at 512, 514 (reversal where no inquiry made into defendant's current or past mental health).  In short, the record contains nothing to suggest how or whether the judge's concern of the previous day had dissipated.  Again, the judge made no findings, nor did he certify the waiver.

The questions of the defendant's waiver of counsel and of his competence were never again revisited.  With the benefit of standby counsel, the defendant represented himself at trial.  It is true that standby counsel never alerted the judge that he was concerned about the

defendant's competence,[14] nor does the trial transcript reflect anything else that would raise such a concern. It is also true that the defendant does not now argue that he was incompetent to stand trial. But whether the defendant was competent to stand trial does not necessarily answer the question whether he was competent on an earlier date to waive his right to counsel. Without contemporaneous findings by the judge who accepted the waiver, we cannot ourselves determine whether the defendant's apparent competence to stand trial is indicative of an earlier competence to waive the right to counsel. See Commonwealth v. Adkinson, 80 Mass. App. Ct. 570, 585 (2011).

The Commonwealth points out that the defendant's statements closely followed a "script" available on the Internet promoted and used by a group known as sovereign citizens to disrupt and delay criminal prosecution. A sovereign citizen

> "is one of a loosely-formed group of citizens who believe that they are sovereign individuals, beyond the reach of any criminal court. These so-called 'sovereign citizens' share a common vernacular and courtroom strategy. Courts across the country have encountered their particular brand of obstinacy -- not consenting to trial, arguing over the proper format and meaning of their names, raising nonsensical

---

[14] The absence of any alert does not constitute waiver of the argument, but does bear on whether the defendant was competent to stand trial. Commonwealth v. Wentworth, 53 Mass. App. Ct. 82, 89 n.4 (2001).

challenges to subject matter jurisdiction, making
irrelevant references to the Uniform Commercial Code,
and referring to themselves as trustees or security
interest holders."

Lewis v. State, 532 S.W.3d 423, 430-431 (Tex. Ct. App.
2016).  See United States v. Benabe, 654 F.3d 753, 762-764
(7th Cir. 2011), cert. denied, 565 U.S. 1132, 565 U.S.
1133, 565 U.S. 1226, 566 U.S. 969 (2012) (describing
sovereign citizen tactics); note 4, supra (describing
sovereign citizens).

The Commonwealth invites us to take judicial notice of
sovereign citizen tactics and to conclude that the
defendant was not genuinely confused during the waiver
colloquy, but rather was using sovereign citizen tactics to
deceive the judge and to manipulate the judicial process.
Setting aside the doubtful proposition that the various
articles provided in the Commonwealth's supplemental
appendix can properly be the subject of judicial notice,
see Mass. G. Evid. § 201 (2021), there is also the problem
that the Commonwealth did not put any of these materials
before the hearing judge below.  "When a defendant asserts
irrelevant or nonsensical arguments, it becomes difficult
to discern whether he lacks a complete understanding of the
proceedings or whether he is simply attempting to subvert
them."  Lewis, 532 S.W.3d at 431.  That task is all the

more difficult when the Commonwealth does not put forward

information that might have helped the judge to assess the

situation correctly.[15]  Once the judge sua sponte raised a

concern about the defendant's competency, the Commonwealth

had the burden to establish the defendant's competency.[16]

See Commonwealth v. Crowley, 393 Mass. 393, 400 (1984)

(Commonwealth has burden of proof of competency once issue

has been raised by parties or by judge on his own).  See

also Commonwealth v. Chatman, 466 Mass. 327, 336 (2013).

In any event, we cannot ourselves in the first instance

make a fact-dependent evaluation of the defendant's

statements and conduct during the waiver of counsel

colloquy.

We now turn to the question of remedy for the unusual

situation with which we are presented, where a judge

accepted a waiver of counsel while expressing a bona fide

---

[15] The Commonwealth's failure is understandable in the circumstances presented here.  Lack of competence had not previously been raised by the defense or the judge, and it appears that the first indication that the defendant may have been resorting to sovereign citizen tactics occurred on the last hearing date before the waiver colloquy.

[16] One week after the truncated hearing, the judge concluded that the defendant, by his repeated terminations of counsel, had been attempting to manipulate the court to delay trial.  That finding was certainly supported by the record.  But the judge did not find, and the Commonwealth did not suggest, that the defendant was manipulating the court by making nonsensical statements.

concern regarding the defendant's competence and without ever making any finding of competence, but where the appellate record suggests that the judge's concern may have been the product of deliberate manipulation by the defendant rather than of his mental infirmity.  Although our cases have not yet dealt with this precise situation, many of them have vacated a defendant's conviction where the judge either did not adequately inquire into competency or make a finding of competency before accepting a waiver.  See, e.g., Means, 454 Mass. at 95-96, 98-100; Hill, 375 Mass. at 51-62; Johnson, 80 Mass. App. Ct. at 512, 514-515; Commonwealth v. Wertheimer, 19 Mass. App. Ct. 930, 930-932 (1984).  These cases have done so on one or both of two theories:  either that the error was structural or that it is impossible to make a retrospective finding of competence as of a particular date.

However, the record on appeal in each of those cases contained substantial evidence raising serious doubt regarding the defendant's competency, whether because of long-standing mental illness, expert testimony, or the defendant's extreme conduct.  This is not such a case. Indeed, as we noted above, the defendant does not argue that he was incompetent to stand trial and -- apart from his statements during the waiver colloquy -- there was no

evidence of mental infirmity past or present. Moreover, the significance of those statements has been cast into serious doubt given that they appear to have been taken from the so-called sovereign citizen litigation delay "playbook." In these circumstances, we conclude, as in Commonwealth v. Simpson, 428 Mass. 646 (1999), that the question of the validity of the defendant's waiver of counsel should be raised in the first instance via a motion for new trial, with the Commonwealth having the burden of proof as to competence.[17,18] Id. at 654.

2. Remaining issues. The defendant's three remaining arguments concern various aspects of the trial, and may be addressed in brief. First, the defendant's argument that the trial judge closed the court room during jury selection

_____

[17] The Commonwealth also argues that the defendant abandoned his right to counsel, as evidenced by his firing of successive counsel to create delay and by his statement that he was going to go to trial on his own. However, abandonment of counsel requires, at a minimum, that the defendant be warned "that he will lose his right to an attorney if he engages in dilatory or abusive conduct towards his attorney." Means, 454 Mass. at 90-91. See Commonwealth v. Clemens, 77 Mass. App. Ct. 232, 240-243 (2010) (implied waiver of counsel is not automatic consequence of defendant's insistence on discharge of attorney; warning of such consequence is required). No such warning was given here.

[18] The significance of the defendant's prior experience with the criminal justice system as it may bear on the question whether the defendant was deliberately manipulating the judicial system rather than laboring under a mental affliction, may also be considered in connection with the motion for new trial.

in violation of the Sixth Amendment to the United States Constitution is not supported by the record. The judge merely sequestered witnesses from the court room during the "testimonial portion" of the trial. Even were we to read this to mean that the witnesses were sequestered during jury empanelment, the Sixth Amendment was not infringed. See Commonwealth v. Collins, 470 Mass. 255, 272-273 (2014); Commonwealth v. Buckman, 461 Mass. 24, 29 (2011), cert. denied, 567 U.S. 920 (2012).

Although we agree with the defendant's argument that the prosecutor went beyond the scope of proper examination when she cross-examined the defendant's business partner about the defendant's prior drug dealing (an error the Commonwealth concedes on appeal), he has not shown that the error resulted in a substantial risk of a miscarriage of justice. Among other things, the trial judge gave a targeted curative instruction, and the evidence against the defendant was extremely strong. See Commonwealth v. Vazquez, 478 Mass. 443, 450-451 (2017).

Finally, we agree with the defendant's argument -- which the Commonwealth concedes -- that, in the absence of chemical analysis, visual inspection of the pills was insufficient to prove beyond a reasonable doubt the chemical composition of the supposed class E pills in the

defendant's possession.  See Commonwealth v. Paine, 86 Mass. App. Ct. 432, 436 (2014).

Conclusion.  On the indictments charging possession with intent to distribute a class E substance (cyclobenzaprine), as a subsequent offense, G. L. c. 94C, § 32D (a), (b), the judgments are reversed, the verdict and finding are set aside, and judgments shall enter for the defendant.  The remaining judgments are affirmed, "but with the recognition that a motion for a new trial" may be filed by the defendant or his counsel on the question of his competence at the time he waived his right to counsel. Simpson, 428 Mass. at 655.

So ordered.